## Case No. 1,009.

### BARNERT et al. v. HIGHTOWER et al.

[10 N. B. R. 157.]

District Court, N. D. Mississippi. May 29, 1874.

BANKRUPTCY—AMENDMENTS TO LAW—RETROACTIVE EFFECT.

[1. The amendment of the bankrupt law approved June 22, 1874, (18 Stat. 178,) provides that the petition filed in involuntary bankruptcy proceedings shall show that one-fourth in number and one-third in amount of all the creditors join in the petition, failing which the proceedings shall be dismissed; and that this provision shall apply to all cases commenced since December, 1873. *Held*, that this does not include cases in which the order adjudicating the debtor a bankrupt had been passed before the adoption of the amendment, and hence such proceedings will not be dismissed under this section.]

[2. But in so far as the amendment of June 22, 1874, affects any remedies not ripened into fixed rights before its adoption, they will be applied to cases in which the adjudication was passed before their adoption, as well as those since made.]

[In bankruptcy. Petition by Barnert Berry, Reed & Co. against Hightower & Butler. The respondents were adjudged bankrupts, and an assignee appointed. The petitioning creditor and others now petition that the proceedings be dismissed. Heard on demurrers by the defendant and certain creditors. Demurrers sustained.]

R. S. Smith, H. W. Walter, and L. P. Cooper, for petitioners.

H. A. Barr and Robert Taylor, for defendants.

HILL, District Judge. The petition of Barnert, Berry, Reed & Co., was, on the 29th day of May, 1874, filed in this court against the defendants, praying that they might be declared bankrupts and the regular proceedings had, by which they were, by the judgment and decree of this court, duly declared bankrupts on the 4th day of June, upon the charge of having, as merchants, suspended and not resumed payment of their commercial paper within a period of fourteen days. On the 7th day of July, an assignee was selected and a deed of assignment executed, conveying to him the estates of the bankrupts, both that held as copartners and as individuals; who took the same in possession and now holds it, except that portion which he has sold under the order of the court. The petitioning creditor, with other creditors of the copartnership now file their petition, praying that the proceedings be dismissed, upon the allegation that the said Barnert, Berry, Reed & Co., upon whose petition the declaration of bankruptcy was made, did not embrace the one-fourth in number, and whose debt did not embrace the one-third in amount of the debts due and owing by the defendants, as required by the amendments to the bankrupt law approved on the 22d day of June, 1874; and

that one-fourth in number and one-third in amount cannot be procured to join in such petition, praying such adjudication. To this petition the defendant and individual creditors have interposed their demurrer, insisting, as cause of demurrer:

First. That congress, by the amendments stated, did not intend to embrace bankrupt causes in which judgments and decrees of adjudication had passed before the amendments went into effect.

Second. That if such had been the intention of the legislation, it would have been an interference with vested rights, and an attempted invasion by the legislative department of the government with that which alone belongs to the judicial department.

The questions thus presented have been ably, I may say exhaustively, argued by the distinguished counsel on both sides; who have read and commented upon a large number of authorities, especially upon the last question stated. These questions are of unusual importance at the present time, as affecting the interest of both bankrupts and creditors, and call for as speedy a settlement as may be consistent with a proper interpretation of the meaning of the amendments, and their proper application, involved in so much doubt and uncertainty, and upon which the ablest members of the profession differ. I have given to the subject all the examination and consideration which the pressure upon my time would permit, with the sole desire to give effect to the intention of congress in the passage of these amendments. It is admitted that the judgment of the court adjudicating the defendants bankrupts, was all regular and binding until the adoption of the amendments; and is still so if unaffected thereby. It is further admitted that as to all involuntary bankruptcies, commenced since the 1st December, 1873, and in which the question of bankruptcy was pending at the adoption of the amendments, they do apply. From the conclusion to which I have arrived, the second ground of demurrer stated, need not be considered only for the purpose of shedding light upon the first.

In considering whether or not congress intended to give a retroactive effect to cases in which judgments of adjudication had passed before the adoption of the amendments, it is necessary to consider the nature and effect of the judgment of adjudication. This involuntary or compulsory feature of the bankrupt law is in its nature a suit brought by the petitioning creditors on behalf of all the other creditors as well as of themselves, against the alleged bankrupt, their common debtor, for the purpose of obtaining judgment against him for the amounts respectively due them, to be satisfied as far as his estate will permit; first, out of the incumbered estate to those holding the incumbrance according to priority, and the remainder to be equally divided between

the general creditors, according to the amount due them respectively. The effect of the adjudication, when made, is such a judgment in favor of the creditors against the bankrupt; the disposition of the estate is only the execution of this judgment.

The assignment made to the assignee relates back to the commencement of proceedings, and is a complete divestiture of the title of the bankrupt to his estate, and a vestiture of the same in the assignee for the benefit of the creditors. It, to my mind, is difficult to conceive any reason why this judgment shall have accorded to it less force and effect than a judgment or decree given or pronounced by a court of law or equity, creating a lien on the property of the defendant. If I am correct in this conclusion, can it be presumed that congress intended to annul and set aside these judgments by this legislation? I cannot believe they did. That body is composed mainly of able lawyers; this is especially so with the distinguished jurists comprising the judiciary committees of both houses, who digested and reported these amendments. Our government is complex in its nature; to give security and permanence, it is in its governing powers divided into three separate, distinct, and independent departments—executive, legislative, and judicial. So long as these different departments keep within their own sphere the government is safe, and the rights of the citizens are secure; but when either shall be permitted to invade and usurp the powers and jurisdiction pertaining to another, there is danger. An assumption of judicial powers by the legislative, or legislative powers by the judiciary, has uniformly met with the strongest condemnation by our wisest and best jurists and statesmen; and I must believe was not intended by those eminent jurists and statesmen who reported these amendments, and those who passed them.

The difficulty arises upon the language used in the section adopted as a substitute for section 39, in the original act [of March 2, 1867, 14 Stat. 536,] which creates the same causes denounced as acts of bankruptcy, as those in the original act, with this exception, that the time allowed the debtor in which to resume the payment of his commercial paper, is extended from fourteen to forty days. Under the original act, to give the court jurisdiction to proceed under the compulsory clause, the petitioning creditors were required to aver in the petition that the alleged bankrupt owed debts to the amount of three hundred dollars or more, and that he owed the petitioning creditor or creditors, provable under the bankrupt law, debts to the amount of two hundred and fifty dollars. These were jurisdictional facts, without the allegation of which the proceedings would be denied in the first instance, and, if averred and denied by the defendant, and not proved, the proceedings would be dismissed without inquiry as to

2FED.CAS.—54

whether the acts of bankruptcy had been committed or not. This amendment upon this jurisdictional question, changes the law in this, that it requires one-fourth in number and one-third in amount of the creditors to join in the petition, and requires that these jurisdictional facts shall be stated in the petition, and, if denied, and a sufficient number and amount shall not be procured within the time limited, the proceedings shall be dismissed. The question is, what proceedings? The answer is, the proceedings to obtain the declaration or judgment of bankruptcy and all the proceedings had, not disturbing rights of others, which may, in the meantime, have attached, growing out of the proceedings. It is provided that the provisions of this section shall apply to all cases commenced since the 1st day of December, 1873; this can well be given to all cases in which the judgment of adjudication had not been had before the adoption of these amendments; no judgment had been pronounced to be revoked, no rights had been fixed, the whole proceedings were in fieri; ample opportunity is given to permit the petitioning creditors to associate with them a sufficient number and amount to bring themselves within the provisions of the law, and also to do justice in relation to any action before that time had; so that it seems to me full effect can be given to the act and the intention of the lawmakers, without in any way affecting either the bankrupts or creditors in cases in which the rights of the bankrupt or creditors were fixed by the judgments and decrees of the court, properly made, before the adoption of the amendments. It is insisted by the present petitioners' counsel that the bankrupt court is constantly in session, and that, from the commencement to the final conclusion of a bankrupt cause there is but one term; that the adjudication of bankruptcy is but an interlocutory order, and may, in the discretion of the court, be set aside at any time, so as to every other order. In a certain sense this is so, but it is a judicial discretion, and must be based upon a proper proceeding and for a sufficient cause and in a proper time, and not by the arbitrary will of the judge or court.

Proceedings in bankruptcy are divided into separate parts, some affecting the bankrupt and the creditors, others affecting the bankrupt alone, and still others the creditor alone, or, rather, some relating to the creditors and bankrupt, and others the creditors alone, as but few questions can affect the bankrupt which do not interest the creditors. The first solemn judgment is the adjudication of bankruptcy, which fixes the status of the bankrupt, with his liabilities and rights as imposed and conferred by the law; this judgment cannot be disturbed or set aside only upon proper judicial proceedings, for sufficient cause, and within a reasonable time. The next is the granting or refusal of the bankrupt's discharge; this judgment, like

the former, is final, unless set aside upon proper judicial proceedings, for sufficient cause, and within the prescribed time, if one is prescribed, if not, within a reasonable time, to be judged of by the court. The allotment of exemptions, the marshaling and disposition of the assets among the creditors, are all, in their nature and effect, judicial judgments and decrees, conferring and fixing rights, final and binding, unless reversed, set aside, changed, or modified by proper proceedings, and for sufficient reasons. These proceedings are held at different times, and not necessarily dependent on each other, nor subject to the arbitrary will or discretion of the judge or court passing them.

It is further argued by counsel that unless congress intended to embrace adjudicated cases, nothing was meant, and this is not to be presumed; that it must have been known to the legislative mind that nearly all cases in which proceedings had been commenced since the 1st of December, 1873, have already been adjudicated; but such was not the case; under the law as it then stood, when *opposition was made and a jury demanded,* the cause could only be tried at a regular term of the court, which, in most districts, is held but twice in the year; but it will be remembered that when congress, immediately on assembling, entered' into the consideration of the repeal or amendment of the bankrupt law, the house, with unusual haste, passed a bill repealing the entire bankrupt law; the senate, being more considerate and deliberate in its organization and mode of passing upon great national questions, did little else, before the Christmas recess, than to consider the question, which resulted in the passage of these amendments, which went to the house for their concurrence, and which, it was hoped and urged, should be adopted and become a law before the recess; and, had such been the case, very few cases commenced after the 1st of December would have passed into adjudication before the amendments would have gone into operation. These amendments were, to a great extent, produced by the financial panic then pervading over the entire country, and were intended to relieve its victims, either creditors or debtors. Had congress believed they had the power or intended to affect adjudicated cases, it would doubtless have extended it back to the commencement of the panic. These considerations, I am of opinion, answer these objections. These amendments, so far as they affect any remedies not ripened into fixed rights before their adoption, will, upon well settled principles, be applied to cases in which the adjudication was passed before their adoption, as well as those since or hereafter to be made; for instance, in granting or withholding the discharge. Under the former law the bankrupt's assets were required to equal fifty per cent. of the debts proved, or the written assent of the designated number and amount of his creditors, to entitle him to a discharge under the present law; this requisition is dispensed with, so that involuntary bankrupts, if otherwise entitled, will be entitled to a discharge without this requisition, although the adjudication of bankruptcy was passed before the new law went into operation so far as regards all other pending remedies. The discharge is a matter of grace, and not right, until after it is granted. This is so both as it affects the bankrupt and his creditors. The creditor, upon the judgment of adjudication, becomes entitled to his portion of the estate, whatever that may be; any further rights are held in abeyance until the question of discharge is determined; if granted, the debt is discharged; if refused, the creditor still holds his obligation against the bankrupt, to be satisfied out of his acquisitions obtained after the bankruptcy, for any balance due. It is not the province of the courts to determine whether these amendments are wise or unwise, but to determine the intent and purpose of the legislative mind in passing them, and to make a proper application of them according to that intention.

It has been urged with unusual energy by counsel, that the language used leaves the court no room for construction, that it positively and unqualifiedly says it shall embrace all cases commenced since the 1st of December, 1873. This, as a matter of course, would include cases in which the discharge has been granted and the estate closed up, of which there are quite a number in this state; but in reply to this it is ingeniously stated by counsel that this contains a provision that the rights already fixed shall remain; yet the case was commenced since the 1st of December and must be embraced within its provisions, as no exception is mentioned. So that in my opinion there is ground for construction, so as to determine what was the legislative meaning and intention; in other words, what class of cases was referred to when it is said "all cases commenced since the 1st of December, 1873." It was, as it appears to my mind, that in which was to be determined the question as to whether or not an act of bankruptcy had been committed. The only change made as to what constituted an act of bankruptcy being the suspension of commercial paper, extending the time necessary to constitute the act of bankruptcy, and this was the class principally desired to be relieved; and as no rights were fixed before the judgment of adjudication, congress could, without any invasion of the judicial department, provide that the party should not be adjudicated a bankrupt unless the suspension had continued for forty days or any other time congress might determine, or any other cause of bankruptcy might have been dispensed with or modified, but no new cause could have been added so as to have a retroactive effect. Having concluded that the cause under con-

sideration is not embraced in the class of cases subject to the retroactive operation of these amendments, renders the consideration of the question as to the power of congress to give a retroactive effect to the amendments unnecessary, and consequently, any consideration of the numerous authorities read and commented upon by the learned counsel on both sides.

The result is that the demurrer must be sustained, the petition dismissed, and the cause proceed, so as to afford to both the bankrupts and creditors their respective rights under the law.